# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| TERRY BROWN, *on behalf of himself and all similarly situated individuals,* | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | : Civil Action No. 1:20-cv-00482 <br> : |
| RP ON-SITE, LLC, | : <br> : |
| Defendant. | : <br> : |

## CLASS ACTION COMPLAINT

Plaintiff, Terry Brown, by counsel, on behalf of himself and all similarly situated individuals, brings the following Complaint against the Defendant, RP On-Site, LLC ("On-Site"). In support of his Complaint, he alleges as follows:

### INTRODUCTION

1. When enacting the Fair Credit Reporting Act, Congress found that consumer reporting agencies "have assumed a vital role" in and there was a need to ensure that they "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S. Code § 1681(a)(3)-(4). To accomplish Congress' goal, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), which is one of the cornerstone provisions of the statute.

2. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires it to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). This

1

section imposes a high, and often disregarded, standard on credit reporting agencies. *See, e.g., Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that " 'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

3. This case arises because On-Site uses overly broad criteria in response to its customers' requests for tenant screening reports. In this instance, On-Site provided Plaintiff's potential landlord with a grossly inaccurate report stating that Plaintiff was listed on the National Sex Offender Registry for attempted first degree sexual abuse. On-Site matched this criminal information to Plaintiff even though it knew that the Plaintiff had a different middle name and date of birth than the offender.

4. Defendant's inaccurate reporting could have been easily prevented if it required a first name, last name, and date of birth match—a common procedure adopted by consumer reporting agencies. *See* Nat'l Consumer Law Ctr., *Broken Records*, 15 (2012) (explaining that "mismatched reports" are "due in large part to unsophisticated matching criteria" and that "many private screening companies rely solely on first name, last name, and date of birth.").

5. By systematically allowing criminal records to be attributed to consumers who had different middle names and date of births than the registered sex offender, Defendant failed to maintain reasonable procedures to assure maximum possible accuracy. Because the putative class members were subject to the same procedure and suffered the same overarching harm, this case is capable and appropriate for class resolution.

6. Plaintiff also alleges an individual claim under § 1681e(b) against Defendant On-Site for reporting materially misleading information about his prior unlawful detainer actions, making it appear that he had three outstanding, unpaid judgments against him, when in fact, each of the three cases had been dismissed, with no judgment entered.

**JURISDICTION**

7. The Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in this judicial district.

**PARTIES**

9. Plaintiff is a natural person and a "consumer" as defined and governed by the FCRA, 15 U.S.C. § 1681a(c).

10. Defendant On-Site is a Delaware limited liability company doing business throughout the United States, including in the State of Virginia, and has its principal place of business located at 2201 Lakeside Blvd., Richardson, TX 75082.

11. Defendant On-Site, by its own admission,[1] is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling and/or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

12. Specifically, Defendant On-Site sells consumer reports, also called background reports, tenant screening-reports, and credit reports, to landlords to use in deciding whether to rent

---

[1] https://www.on-site.com/renter-relations/ (last visited April 23, 2020).

to a prospective tenant. These reports include the prospective tenant's employment history, criminal history, sex offender status, landlord tenant court records, and credit information.

## FACTS

*On-Site's Business Practices*

13. Defendant On-Site has operated in the rental screening business since 1999.

14. Prior to 2017, Defendant On-Site operated as On-Site Manager, Inc. However, on August 2, 2017, On-Site was acquired by RealPage, Inc., another tenant-screening company, for approximately $250 million in cash.[2]

15. Upon information and belief, Defendant On-Site processes thousands of rental screening reports each year.

16. Defendant On-Site's client base includes over 12,000 property owners and management companies in all 50 states[3] and its website boasts that it flagged 260,000 applicants as "risky" in 2016 alone.[4]

17. Upon information and belief, discovery will show that Defendant On-Site uses a combination of methods for obtaining the information that it places in the background reports that it sells to its clients regarding prospective tenants.

18. Upon information and belief, Defendant On-Site obtains some of the information in its reports, such as sex offender registry information, from a largely automated process using webscrape technology, in which a computer program accesses the registry and retrieves information regarding sex offenders listed on the registry.

---

[2] https://www.realpage.com/news/realpage-to-acquire-on-site/ (last visited Apr. 23, 2020).
[3] https://www.on-site.com/renter-relations/ (last visited Apr. 23, 2020).
[4] https://www.on-site.com/screening/ (last visited Apr. 23, 2020).

19.     Upon information and belief, Defendant On-Site then compiles this information and runs it through an algorithm that matches the record to a consumer's background report based on certain matching criteria. Discovery will show that this process takes place electronically, with no human being involved in the compiling, matching, and reporting of sex-offender data.

20.     However, upon information and belief, Defendant On-Site's algorithm allows information, including sex offender information, to be placed on a consumer's report, even though it does not match the personal identifying information (such as middle name and date of birth) of the applicant to whom the report relates.

21.     This procedure results in sex offender records being inaccurately attributed to consumers, as demonstrated by the Plaintiff's experience in this case.

*Facts Regarding the Plaintiff*

22.     In January 2020, Plaintiff applied to rent an apartment at the Oasis at Montclair apartment complex in Dumfries, Virginia.

23.     As part of the application process, Plaintiff was required to undergo a background report.

24.     In order for his landlord to obtain his background report, Plaintiff provided his name, social security number, date of birth, and driver's license number.

25.     Plaintiff's landlord ordered Plaintiff's background report from Defendant On-Site on or around January 24, 2020. In requesting Plaintiff's background report, the landlord provided Defendant On-Site with all of Plaintiff's personal identifying information.

26.     Defendant On-Site provided Plaintiff's background report to the Oasis at Montclair apartment complex on or around January 24, 2020.

27. The report that Defendant On-Site provided to the Oasis at Montclair regarding the Plaintiff was grossly inaccurate.

28. The report stated that Plaintiff was listed on the National Sex Offender Registry as a registered sex offender in the District of Columbia for attempted first degree sexual abuse.

29. This entry does not belong to the Plaintiff.

30. Plaintiff is not a registered sex offender in any jurisdiction, nor had he ever been charged with attempted first degree sexual abuse in the District of Columbia.

31. In fact, Plaintiff has no criminal history.

32. Defendant On-Site knew or should have known that this information did not belong to the Plaintiff because it did not match the personal identifying information that the Oasis at Montclair provided On-Site when it requested Plaintiff's report.

33. For example, the sex offender's middle name is Rothel.

34. Plaintiff does not have a middle name.

35. In addition, the sex offender's date of birth is in October 1977.

36. Plaintiff was born in September 1976.

37. Despite these discrepancies, Defendant On-Site matched the information to Plaintiff's background report and reported it to his potential landlord—apparently because Plaintiff had the same first and last name as the offender.

38. This derogatory information was also highlighted in the report, presumably to signal to the landlord that it may be a basis to deny Plaintiff's rental application.

39. In addition to the inaccurate sex offender information, Defendant On-Site also included three unlawful detainer action of Plaintiff's background report from Prince George County General District Court.

40. The information that Defendant On-Site published about these three cases were materially misleading.

41. In reality, each of these cases were filed against the Plaintiff, but were dismissed after filing, with no judgment being taken against the Plaintiff in any of the three cases.

42. Despite the dismissal of these cases, Defendant On-Site's background report lists a judgment amount for each of the three cases, in the amounts of $2,773, $1,392, and $1,428.

43. In addition, the three entries list an "amount paid" field, each stating that Plaintiff has not paid anything towards any of the three cases.

44. Taken together, these entries make it appear that Plaintiff has a total of $5,593 in outstanding judgments against him, when in reality, each of these cases were dismissed without any judgment being entered.

45. Each of these entries were also highlighted in the report, presumably to signal to the landlord that it may be a basis to deny Plaintiff's rental application.

46. As a result of Defendant On-Site's inaccurate and misleading background report regarding the Plaintiff, the Oasis at Montclair denied Plaintiff's rental application.

47. Upon learning of the inaccurate information on his background report, Plaintiff disputed the inaccurate information with Defendant On-Site.

48. At all times relevant to this lawsuit, Defendant On-Site's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. On-Site's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and On-Site will continue to engage

in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports than in producing accurate reports.

49. If Defendant On-Site had reasonable procedures to ensure that the information it published about prospective tenants to its customers was as accurate as possible, it would not have included a sex offender entry on Plaintiff's report that, on its face, did not belong to the Plaintiff due to a mismatched middle name and date of birth.

50. Defendant On-Site is well aware of the FCRA's requirement that the information it reports about prospective tenants must be as accurate as possible and that its loose matching criteria violates this requirement.

51. Defendant On-Site's predecessor company, On-Site Manager, Inc. was sued for similar FCRA violations. *Wenning v. On-Site Manager, Inc.*, No. 14 CIV. 9693 (PAE) (S.D.N.Y. July 8, 2016).

52. In addition, Defendant On-Site's parent company, RealPage, Inc., has been sued previously by the Federal Trade Commission ("FTC") for FCRA violations due to its reporting practices because it used loose matching criteria to link potential tenants with criminal records, including records containing sex offender registry information. *FTC v. RealPage, Inc.*, No 3:18-cv-2737 (N.D. Tex.). RealPage paid $3 million, the largest civil penalty obtained by the FTC against a background screening company, to settle FTC claims alleging it failed to take reasonable steps to ensure the maximum possible accuracy of tenant screening information it includes in its consumer reports provided to its clients.

**COUNT I – FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**
**Class Claim**

53.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

54.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class (the "Date of Birth Class") defined as follows:

> All natural persons residing in the United States (a) who were the subject of a report sold by Defendant On-Site; (b) in the five years predating the filing of this Complaint and continuing through the date which the class list is prepared; (c) which identified the applicant has being listed on a sex offender registry; (d) despite the fact that the sex offender's date of birth did not match the applicant's date of birth.
>
> Excluded from the class definition are any employees, officers, directors of Defendant On-Site, any attorney appearing in this case, and any judge assigned to hear this action.

55.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Plaintiff estimates that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by Defendant On-Site and the class members may be notified of the pendency of this action by published and/or mailed notice.

56.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1.) whether On-Site's failure to require date of birth matches for sex offender records was a procedure designed to ensure that its reports were as accurate as possible; (2.) whether On-Site's conduct constituted a violation of the FCRA; and (3.) whether On-Site's conduct was willful.

57.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the

other putative class members. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members' claims.

58. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because his interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with his counsel, to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor his counsel have any interest that might conflict with his vigorous pursuit of this action.

59. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by On-Site's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

60. As described above, Defendant On-Site used loose matching criteria and algorithms that placed sex offender data on consumers' tenant screening reports, even though the dates of birth associated with the sex offenders did not match the applicant's date of birth.

61. This conduct violated § 1681e(b) of the FCRA because in using this loose matching criteria and algorithms, On-Site failed to follow reasonable procedures to assure the maximum possible accuracy of the information it that it published about consumers to its landlord clients.

62. Plaintiffs and each putative class member suffered real and actual harm and injury.

63. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in On-Site's files and reports.

64. Class members were also falsely painted as sex offenders to their prospective landlord.

65. On-Site's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Equifax liable under 15 U.S.C. § 1681o.[5]

66. As a result of these FCRA violations, Equifax is liable for statutory damages from $100.00 to $1,000.00 for Plaintiff and each class member, punitive damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

**COUNT II – FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**
**Class Claim**

67. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

---

[5] Plaintiff seeks statutory and punitive damages on behalf of himself and others. If class certification is denied, Plaintiff intends to seek actual damages for Defendant On-Site's violation.

68. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class (the "Middle Name Class") defined as follows:

> All natural persons residing in the United States (a) who were the subject of a report sold by Defendant On-Site; (b) in the five years predating the filing of this Complaint and continuing through the date which the class list is prepared; (c) which identified the applicant has being listed on a sex offender registry; (d) despite the fact that the sex offender's middle name did not match the applicant's middle name.
>
> Excluded from the class definition are any employees, officers, directors of Defendant On-Site, any attorney appearing in this case, and any judge assigned to hear this action.

69. **Numerosity. Fed. R. Civ. P 23(a)(1).** Plaintiff estimates that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by Defendant On-Site and the class members may be notified of the pendency of this action by published and/or mailed notice.

70. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1.) whether On-Site's failure to require middle name matches for sex offender records was a procedure designed to ensure that its reports were as accurate as possible; (2.) whether On-Site's conduct constituted a violation of the FCRA; and (3.) whether On-Site's conduct was willful.

71. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members' claims.

72. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because his interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with his counsel, to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor his counsel have any interest that might conflict with his vigorous pursuit of this action.

73. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by On-Site's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

74. As described above, Defendant On-Site used loose matching criteria and algorithms that placed sex offender data on consumers' tenant screening reports, even though the middle names associated with the sex offenders did not match the applicant's middle name.

75. This conduct violated § 1681e(b) of the FCRA because in using this loose matching criteria and algorithms, On-Site failed to follow reasonable procedures to assure the maximum possible accuracy of the information it that it published about consumers to its landlord clients.

76. Plaintiffs and each putative class member suffered real and actual harm and injury.

77. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in On-Site's files and reports.

78. Class members were also falsely painted as sex offenders to their prospective landlord.

79. On-Site's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Equifax liable under 15 U.S.C. § 1681o.[6]

80. As a result of these FCRA violations, Equifax is liable for statutory damages from $100.00 to $1,000.00 for Plaintiff and each class member, punitive damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

**COUNT III – FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**
**Individual Claim**

81. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

82. Defendant On-Site violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained.

---

[6] Plaintiff seeks statutory and punitive damages on behalf of himself and others. If class certification is denied, Plaintiff intends to seek actual damages for Defendant On-Site's violation.

83. Specifically, Defendant On-Site reported three unlawful detainer actions in the Plaintiff's background report, each listing a "judgment amount" and a "$0.00" value in the "amount paid" field.

84. These entries made it appear that Plaintiff had three outstanding, unpaid judgments against him, when in reality, each of these cases were dismissed, with no judgment being entered in any of the cases.

85. This reported was materially misleading and therefore violated § 1681e(b) of the FCRA.

86. As a result of Defendant On-Site's conduct, Plaintiff suffered concrete and particularized harm, including without limitation: denial of his apartment application, damage to reputation, embarrassment, humiliation, and other emotional distress.

87. Defendant On-Site's conduct in violating § 1681e(b) was willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, on behalf of himself and the putative class members, moves for class certification and for statutory and punitive damages, as well as his attorney's fees and costs against the Defendant for the class claim, as well as actual, statutory, and punitive damages and attorney's fees and costs for his individual claim; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**TERRY BROWN**

By: _/s/ Andrew J. Guzzo_
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
*Counsel for Plaintiff*